Philip Guess, OSB #176408
Email: philip.guess@klgates.com
K&L Gates LLP
925 4th Avenue, Suite 2900
Seattle, WA 98104
Tel: (206) 623-7580/Fax: (206) 623-7022

Meredith Bateman, OSB #192273
Email: meredith.bateman@klgates.com
K&L GATES LLP
1 SW Columbia Street, Suite 1900
Portland, OR 97204
Tel.: (503) 228-3200\Fax: (503) 248-9085

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| VIRGO INVESTMENT GROUP, LLC,<br><br>                     Plaintiff,<br><br>v.<br><br>BRIAN POGGI,<br><br>                  Defendant. | Case No. _____<br><br>**PLAINTIFF VIRGO INVESTMENT GROUP, LLC'S VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff Virgo Investment Group, LLC ("VIG") files this Verified Complaint (the "Complaint") against Brian Poggi ("Defendant") seeking a declaration that VIG is not a party to any arbitration agreement with Defendant and to enjoin Defendant from proceeding with an arbitration he has filed before the American Arbitration Association ("AAA").

## INTRODUCTION

1.      This is an action to enjoin the arbitration wrongly pending against VIG and for an order declaring that VIG is not a party to any arbitration agreement with Defendant.

2.      On March 5, 2020, VIG was involuntarily named as a respondent in an arbitration filed by Defendant before AAA in Washington, D.C. (the "Arbitration").

3.      Defendant inappropriately commenced the arbitration against VIG in reliance on the arbitration provision contained in a franchise agreement (the "Franchise Agreement") solely between Defendant Brian Poggi and Zippy Shell Incorporated ("Zippy"). *See* Ex. A (Franchise Agreement) at 31–32 § 13.4.

4.      As Defendant concedes, VIG is not a party to the Franchise Agreement or any other agreement to arbitrate with Defendant. *See* Ex. E (Defendant's Response) at 2, 10

5.      VIG has no relationship, contractual or otherwise, with Defendant Poggi.

6.      VIG has not participated in the Poggi Arbitration in any way and has expressly objected to AAA's jurisdiction. *See* Ex. B (Letter Objecting to Jurisdiction).

7.      Further, VIG's sole connection to Zippy is attenuated: VIG provides management services for certain investment fund entities (the "Investment Funds"). Those Investment Funds are invested in many ventures. Amongst those ventures are investments of various percentages into two holding companies (the "Holding Companies") that own shares of stock in Zippy. One VIG member serves on the board of directors of Zippy.

8.      However, even if the ownership interests in the Investment Funds and Holding Companies were added together (rather than treating them as the separate funds and companies that they are), the total would still represent only a minority ownership in Zippy.

9.      Despite his own concession, the absence of a relationship between VIG and Defendant, and the attenuated interest between VIG and Zippy, Defendant insists AAA has jurisdiction over VIG and that AAA or an arbitration panel in a AAA proceeding can rule on their own jurisdiction. Federal law clearly provides otherwise and requires such determinations be made by courts, not arbitrators. However, Defendant cannot prove that VIG is bound to arbitrate and attempts to deny VIG its day in court by refusing to submit this question of arbitrability to the appropriate forum, this Court. Accordingly, VIG respectfully asks this Court to issue an order and a judgment: (a) declaring that VIG is not a party to the Franchise Agreement or its arbitration provision, Section 13.4; and (b) staying and enjoining the improper Arbitration pending against VIG.

## PARTIES

10.     Plaintiff VIG is a limited liability company organized under the laws of and registered to do business in the State of Delaware with its principal place of business located at 1201 Howard Avenue, #300, Burlingame, CA 94010. VIG's members reside in Florida, Maryland, New York, New Jersey, California, and Georgia.

11.     Defendant Brian Poggi is a citizen and resident of the State of Oregon residing at 1968 Glenmorrie Lane, Lake Oswego, Oregon 97034.

## JURISDICTION AND VENUE

12.     This is an action for: (a) declaratory judgment under Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 declaring that VIG is not a party to any arbitration agreement with Defendant; and (b) injunctive relief pursuant to Federal Rule of Civil Procedure 65(b) and

the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 2 and 3, staying and enjoining the arbitration wrongfully pending against VIG.

13.     This Court has subject matter jurisdiction over the parties pursuant to 28 U.S.C. § 1332(a). Defendant is not a citizen of the same state as Plaintiff VIG, or its members, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009) ("The text of § 4 drives our conclusion that a federal court should determine its jurisdiction by 'looking through' a § 4 petition to the parties' underlying substantive controversy."); *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210, 213 (2d Cir. 2014) ("We discern no reason not to apply the logic of *Vaden* equally to actions to enjoin arbitration, so we conclude that subject-matter jurisdiction exists . . . under 28 U.S.C. § 1332, because the parties in each case are diverse and over $75,000 is at issue in the underlying arbitrations.").

14.     Further, this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as the claims at issue in the underlying arbitration filed by Defendant involve federal questions under 18 U.S.C. §§ 1962(c) and (d). *See Vaden v. Discover Bank*, 556 U.S. at 62 (2009) ("The text of § 4 drives our conclusion that a federal court should determine its jurisdiction by 'looking through' a § 4 petition to the parties' underlying substantive controversy."); *see also Tamiami Partners ex rel. Tamiami Dev. Corp. v. Miccosukee Tribe of Indians of Fla.*, 177 F.3d 1212, 1223, n. 11 (11th Cir. 1999) (ruling that "it is appropriate for us to 'look through' Tamiami's arbitration request at the underlying licensing dispute in order to determine whether Tamiami's complaint states a federal question."); *Goldman, Sachs & Co.*, 764 F.3d at 213 ("We discern no reason not to apply the logic of *Vaden* equally to actions to enjoin arbitration, so we conclude that subject-matter jurisdiction exists both under 28 U.S.C. § 1331, because the arbitrations involve

claims under the Securities Exchange Act of 1934."). Further, this Court has subject matter jurisdiction over the remaining claims in the underlying arbitration filed by Defendant pursuant to 28 U.S.C. § 1367(a) as these remaining claims arise out of the same case or controversy.

15.    Personal jurisdiction in the District of Oregon is proper because, at all times relevant to this complaint, Defendant was a resident of the State of Oregon and operated his business as a sole proprietorship in the State of Oregon. Defendant continues to reside in the State of Oregon.

16.    This Court has jurisdiction to determine whether the Plaintiff is subject to a valid agreement to arbitrate Defendant's claims. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

17.    Venue is appropriate and proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(c)(2) as to Defendant, who is a resident of this judicial district.

## FACTUAL BACKGROUND

### A.  VIG HAS NO RELATION TO DEFENDANT

18.    VIG is the manager of several Investment Funds, including certain funds which, in June 2015, invested in a special purpose Holding Company named Virgo-Terrapin, LLC ("Terrapin"). Terrapin directly purchased a minority interest in Zippy.

19.    Zippy is a moving and mobile self-storage company that licenses its business to independent companies through the sale of franchises.

20.    Almost five years ago, in September 2015, Defendant became a franchisee of Zippy. *See* Ex. A ("Franchise Agreement").

21.    In June 2018, Investment Funds managed by VIG made an additional investment, along with many other investors, through another certain Holding Company. The several VIG managed Investment Funds made a total investment that when treated collectively, gave those Investment Funds an approximate 15.8% ownership interest of that Holding Company. In turn, that Holding Company provided funding to Zippy to acquire another storage company, 1-800-Pack-Rat, LLC ("Pack-Rat"). At all times, the total indirect interest held by the Investment Funds managed by VIG, take either separately or collectively, represented a minority interest in Zippy.

22.    Due to Defendant's own management and business decisions, Defendant's Zippy franchise failed.

23.    However, Defendant blamed Zippy and VIG, amongst others, for the failure of its business in an arbitration demand. *See generally* Ex. D (Arbitration Demand).


B.  THE FRANCHISE AGREEMENT

24.    To initiate its franchise operations, Defendant entered into a Franchise Agreement with Zippy in September 2015.[1] *See* Ex. A (Franchise Agreement).

25.    Section 13.4 of the Franchise Agreement between Defendant and Zippy states that the "**parties**" agree to submit any claim or dispute to binding arbitration before AAA. *See* Ex. A (Franchise Agreement) at 31–32.

26.    Defendant and Zippy are the only parties to the Franchise Agreement.

---

[1] Plaintiff's Exhibit A is the same copy of the Franchise Agreement that Defendant attached to its Arbitration Demand. That copy, which was provided by Defendant, is not signed by either Defendant or Zippy. *See* Ex. A (Franchise Agreement). VIG does not assert that the Franchise Agreement is otherwise invalid, as it applies to Defendant or Zippy. VIG only contends that it is not a signatory to the Franchise Agreement and, thus, has no obligation to submit to an arbitration or the jurisdiction of the AAA.

27.     VIG is neither a party to the Franchise Agreement nor the arbitration provision contained therein.

## C. POGGI INITIATES ARBITRATION WITH THE AAA

28.     On March 5, 2020, Defendant filed an arbitration demand (the "Arbitration Demand") with AAA, naming VIG as a respondent. *See* Ex. D (Arbitration Demand).

29.     Defendant's counsel has alleged that VIG is subject to the Franchise Agreement's arbitration clause and that the AAA has the power to decide that question of arbitrability—whether VIG, a non-signatory, is bound by that agreement.

30.     On April 20, 2020, VIG formally objected to the AAA's jurisdiction and expressed to the AAA that the threshold issue of arbitrability as to those who are not parties to any arbitration agreement must be decided by courts. *See* Ex. B (Letter Objecting to Jurisdiction).

31.     The AAA, in response to Defendant's request, determined that it would defer to the decision of its Administrative Review Council ("AAA Council").

32.     Subsequently, and while expressly reserving its right to object to the AAA's jurisdiction, VIG agreed to a stay of all arbitration proceedings that was requested by Zippy and Mr. Poggi's counsel to provide time for a mediation. That mediation proved unsuccessful and on April 16, 2020, Defendant requested the AAA remove the proceedings from abeyance.

33.     On May 10, 2020, Defendant filed a Response to VIG's Objection to AAA's Jurisdiction (the "Response"), conceding that VIG is not a party to the Franchise Agreement but, nonetheless, requesting that "that [VIG] be compelled to participate in the arbitration under the principles of veil piercing and estoppel." Ex. E (Defendant's Response) at 2, 10. Defendant's Response further asserted that AAA administrators can bind VIG to arbitrate without any

presentation of evidence, assume all their pled facts are true, and, if needed, force VIG to conduct

discovery before the AAA's jurisdiction would even be determined:

> Because arbitration is not bound by the rules of evidence and no discovery has been
> conducted, we assume the facts in the Arbitration Demand will be taken as true for
> the purposes of the initial administrative decision determining whether Virgo is
> bound to arbitrate. If Virgo disputes the pleaded facts, we request the opportunity
> to conduct discovery on the issues raised.

Ex. E (Defendant's Response) at 2.

34.    AAA responded in the same manner it had before, identifying that the AAA

Council would make the determination.

35.    On May 18, 2020, AAA announced to the parties that it would proceed with the

arbitration with VIG as a named respondent unless otherwise instructed by a court. *See* Ex. C

(AAA Determination) ("AAA shall move forward with arbitrator selection absent a court order

mandating a stay or a decision of an arbitrator to remove Virgo as a named party.").

## COUNT I – DECLARATORY RELIEF

36.    Plaintiff VIG incorporates the foregoing paragraphs by reference as if fully set

forth herein.

37.    Plaintiff VIG is not a party to either the Franchise Agreement or its arbitration

provision. Section 13.4 of the Franchise Agreement states:

> Before any arbitration takes place, *the parties* agree to submit the controversy or
> claim to non-binding mediation before a mutually-agreeable mediator. Thereafter,
> *the parties* agree to submit any claim or dispute, disagreement, or matter pertaining
> to interpretation of this Agreement or issues relating to the offer and sale of this
> license except as otherwise specified in Sections 12 and above (a "Dispute"), to
> binding arbitration before the American Arbitration Association ("AAA") in The
> District of Columbia.

*See* Ex. A (Franchise Agreement) at 31, § 13.4 (emphasis added). Zippy and Defendant Poggi are the only parties to the Franchise Agreement. *See* Ex. A (Franchise Agreement). There is no ambiguity.

38.     Plaintiff VIG is therefore entitled, pursuant to Fed. R. Civ. P. 57, to the entry of an order and judgment declaring that it is not a party to any valid arbitration agreement with Defendant.

39.     There is a bona fide, actual, and present need for the declaration as Defendant Poggi is attempting to force VIG to participate in arbitration proceedings on a dispute that VIG never agreed to arbitrate.

40.     The facts alleged herein establish that there is a substantial and bona fide controversy between Plaintiff and Defendant, having adverse legal interests, and is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

**WHEREFORE** Plaintiff VIG respectfully requests that this Court enter an Order declaring that VIG is not subject to the arbitration clause in Defendant's Franchise Agreement with Zippy, that Defendant's claims are improperly before the AAA, and any such other further relief as the Court may deem just and proper.

## COUNT II – INJUNCTIVE RELIEF

41.     Plaintiff VIG incorporates the foregoing paragraphs by reference as if fully set forth herein.

42.     "Generally, a party seeking to enjoin arbitration proceedings must obtain a preliminary injunction." *Wallace, v. AmSurg Holdings, Inc.*, 6:15-CV-01548-MC, 2015 WL

7568592, at *4 (D. Or. Nov. 24, 2015) (citing *Textile Unlimited, Inc. v. A.BMH & Co., Inc.*, 240 F.3d 781, 786 (9th Cir. 2001)).

43.    To obtain a preliminary injunction, a plaintiff may satisfy either: "(1) the *Winter* factor test; or (2) the 'sliding scale' test, also referred to as the 'serious questions' test." *Neighborhood Assistance Corp. of Am. v. First One Lending Corp.*, SACV 12-463 DOC MLGX, 2012 WL 1698368, at *14 (C.D. Cal. May 15, 2012) (quoting *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1135 (9th Cir.2011)).

44.    Under "the *Winter* factor test," a plaintiff must establish: "(1) she is 'likely to succeed on the merits'; (2) the 'balance of equities tips in [plaintiff's] favor'; (3) she is 'likely to suffer irreparable harm in the absence of preliminary relief'; and (4) a preliminary injunction is in the public interest." *Id*. (quoting *Alliance for the Wild Rockies,* 632 F.3d at 1135).

45.    Under the "sliding scale test," a plaintiff must establish: (1) "serious questions going to the merits"; (2) "a balance of hardships that tips sharply towards the plaintiff"; (3) "a likelihood of irreparable injury"; and (4) a preliminary injunction is in the public interest. *See id.* (citing *Alliance for the Wild Rockies,* 632 F.3d at 1135). Under this test, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Brinton Bus. Ventures, Inc. v. Searle*, 248 F. Supp. 3d 1029, 1032 (D. Or. 2017) (quoting *Alliance for the Wild Rockies,* 632 F.3d at 1131).

A. THE AAA LACKS AUTHORITY TO RULE ON ITS OWN JURISDICTION OVER A NON-SIGNATORY

46.    This dispute does not belong in arbitration. VIG is not subject to the Franchise Agreement, or the arbitration provision therein, because VIG is not a party to the Franchise Agreement. *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)

("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.").

47.     Whether the Parties are subject to a valid agreement to arbitrate Defendant's claims is for this Court to decide. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Nonetheless, Defendant Poggi has not pursued any action with the court and opted, instead, to request AAA determine its jurisdiction over VIG.

48.     The threshold question of whether an arbitration agreement exists at all is a matter of contract interpretation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Accordingly, issues of arbitrability require an examination of the validity and scope of the agreement. *See Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Absent an agreement to arbitrate, the parties cannot be compelled to resolve their dispute in arbitration. *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016); *see also PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990), *abrogated on other grounds by Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) ("If a court determines that a valid arbitration agreement does not exist or that the matter at issue clearly falls outside of the substantive scope of the agreement, it is obliged to enjoin arbitration."); *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 141 (2d Cir. 2011) ("where the court determines . . . that the parties have not entered into a valid and binding arbitration agreement, the court has the authority to enjoin the arbitration proceedings.").

49.     While, historically, there is a strong federal policy in favor of arbitration, "the 'liberal federal policy regarding the scope of arbitrable issues is inapposite' when the question is 'whether a particular party is bound by the arbitration agreement.'" *Eclipse Consulting, Inc. v. BDO USA, LLP*, 3:17-CV-826-AC, 2018 WL 6735085, at *5 (D. Or. Nov. 13, 2018) (quoting *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006)).

50.     After filing his Arbitration Demand on March 5, 2020, Defendant initially failed to identify any basis for binding VIG, a non-signatory to the Franchise Agreement, to arbitration and, further, failed to raise any legal authority allowing the AAA to rule on the issue of arbitrability.

51.     On May 10, 2020, Defendant submitted its Response to the AAA. However, this that Response also failed to raise any legal authority that would allow the AAA to rule on its own jurisdiction over VIG, a non-signatory.

52.     Instead, Defendant's Response makes only a veiled reference to the issue, by citing *Mobius Mgmt. Sys., Inc. v. Technologic Software Concepts, Inc.*, in the midst of their purported argument for a finding of alter-ego. *See* Ex. E (Defendant's Response) at 5. Claimants' assertion that the *Mobius* court "upheld the arbitrator's conclusion, stating the decision of which issues pertaining to the relationship of the parties are arbitrable should be left to the arbitrators" is misleading and inaccurate. 02 CIV. 2820 (RWS), 2002 WL 31106409, at *1 (S.D.N.Y. Sept. 20, 2002); Ex. E (Defendant's Response) at 5. Rather, the *Mobius* court's decision to enforce an arbitration award's finding of jurisdiction over a non-signatory was necessarily premised upon its finding that the non-signatory had waived his objection to the arbitrator's jurisdiction. There is nothing to indicate VIG has waived its objection to the AAA's jurisdiction nor have Claimants made that allegation. To the contrary, VIG has formally objected to AAA's jurisdiction, as well as

AAA's authority to determine this issue of arbitrability, and has explicitly preserved those objections. *See* Ex. B (Letter Objecting to Jurisdiction).

53.     Defendant takes its unfounded request even further and has requested AAA not only rule on the matter, but asserts that without presenting a scintilla of evidence to support their erroneously pled facts, AAA can bind VIG to arbitrate:

> Because arbitration is not bound by the rules of evidence and no discovery has been conducted, we assume the facts in the Arbitration Demand will be taken as true for the purposes of the initial administrative decision determining whether Virgo is bound to arbitrate. If Virgo disputes the pleaded facts, we request the opportunity to conduct discovery on the issues raised.

Ex. E (Defendant's Response) at 2. By doing so, Defendant Poggi attempts to shift the burden to VIG, rather than presenting evidence to bind VIG to arbitrate claims that Defendant Poggi brought, himself. This is improper, illogical, and inequitable.

54.     As the party seeking to bind a non-signatory to an arbitration he initiated, Defendant bears the evidentiary burden of proving his theory, and to prove it in court. *See* 9 U.S.C.A. § 4; *see also Varon v. Uber Techs., Inc.*, CV MJG-15-3650, 2016 WL 1752835, at *2 (D. Md. May 3, 2016) (quoting *Mercury Constr. Corp. v. Moses H. Cone Mem'l Hosp.*, 656 F.2d 933, 939 (4th Cir. 1981)) (holding the party seeking to arbitrate must establish two facts: "(1) [t]he making of the agreement and (2) the breach of the agreement to arbitrate."); *Amkor Tech., Inc. v. Alcatel Bus. Sys.,* 278 F.Supp.2d 519, 521 (E.D.Pa.2003) (citing *Tencara Shipyard S.P.A.,* 170 F.3d at 350) ("the party seeking to enforce the arbitration clause must show that the non-signatory to be bound received a 'direct benefit' from the contract containing the clause.").

55.     A party seeking to compel arbitration must present evidence and the court, resolving all reasonable doubts in favor of the party opposing arbitration, "may compel arbitration only if, after considering the evidence presented, there is no genuine issue of material fact as to

whether the parties' contract included an arbitration agreement." *In re First Thermal Sys., Inc.*, 182 B.R. 510, 512–13 (Bankr. E.D. Tenn. 1995); *see also O'Brien v. Rogovin Moving & Storage Co. Inc.*, 3:04CV1150 (WWE), 2005 WL 8167298, at *1 (D. Conn. Feb. 28, 2005) (citing *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293-94 (2002)) ("A court will not compel arbitration if the evidence is insufficient to demonstrate an agreement to arbitrate."); *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 159 (3d Cir. 2009) (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.,* 636 F.2d 51, 54 (3d Cir.1980)) ("In making this determination, the party opposing arbitration is entitled to 'the benefit of all reasonable doubts and inferences that may arise.'"). Defendant's request that AAA bind VIG to arbitrate by simply "assum[ing] the facts in the Arbitration Demand" is decidedly contrary to the law and an attempt to avoid shouldering a burden of proof that he cannot meet.

56.     Defendant concedes VIG is not a signatory to the Franchise Agreement, yet Defendant refuses to seek recourse with the court and continues to request the AAA rule on whether VIG is bound to arbitrate. *See* Ex. E (Defendant's Response) at 2, 10. Thus, Defendant has ignored clear law dictating that questions of arbitrability be decided by the court and, instead, sought to have the AAA or a panel under its administration rule on the question of arbitrability.

57.     On May 18, 2020, over the objections of VIG and in contradiction to the law, the AAA agreed to "move forward" with the arbitration, effectively consenting to Defendant forcing VIG to participate in the arbitration. *See* Ex. C (AAA Determination). Thus, without injunctive relief from this Court, Defendant Poggi will be able to request its ultimate relief to an arbitration panel, rather than this Court. *See* Ex. E (Defendant's Response) ("Based on the current record, Poggi respectfully requests that Virgo be compelled to participate in the arbitration under the principles of veil piercing and estoppel.").

**B. DEFENDANT'S THEORIES BINDING NON-SIGNATORIES TO ARBITRATE ARE WITHOUT MERIT AND FACTUAL SUPPORT.**

58.     Generally, there are five principals that could allow a non-signatory to be bound to arbitrate: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Comer*, 436 F.3d at 1101. Defendant asserts that two of these theories—veil piercing and estoppel—are applicable to VIG but fail to cite any evidence to support those claims. Defendants further assert a third theory, from outside those contract and agency principles, that is entirely irrelevant and inapplicable to the issues at hand. Regardless, Defendant cannot meet its burden of proof under any of these theories.

59.     By choosing to pursue recourse with the AAA, Defendant has failed to identify any sustainable theory to support VIG's required submission to arbitration, ignoring the absence of a relationship between Defendant and VIG, as well as the limitations of a signatory seeking to compel a non-signatory to arbitration. *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 202 (3d Cir. 2001) ("Appellants recognize that these cases bind a signatory not a non-signatory to arbitration, but argue that this is a distinction without a difference. They are wrong."); *ABM Indus. Groups, LLC v. Int'l Union of Operating Engineers, Local 30A, 30B, AFL-CIO*, No. 1:18-CV-10770-GHW, 2019 WL 3554504, at *3, n. 1 (S.D.N.Y. Aug. 5, 2019) ("This potential basis for estoppel, however, does not apply in situations that mirror the current case, namely where the signatory to an arbitration clause seeks to enforce it against a non-signatory.").

60.     Support for Defendant's assertion that VIG, a non-signatory to the Franchise Agreement, is bound to arbitrate has been limited to conclusory, unfounded statements of law and fact.

61.    In his Response, Defendant vaguely alleges that VIG is bound to arbitrate under theories of veil piercing and estoppel. *See* Ex. E (Defendant's Response) at 4–8. However, Defendant fails to support either assertion with evidence. Instead, Defendant relies exclusively on citation to his own Arbitration demand, which also provides no evidence to support its assertion that VIG is bound to arbitrate. While this explains Defendant's request for AAA to simply "assume the facts in the Arbitration Demand," it does not qualify as evidence to support either theory. Ex. E (Defendant's Response) at 2.

62.    Defendant frames these issues as if they require a low burden. However, such remedies are rare and cannot be supported by conclusory allegations. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) ("[t]he doctrine of piercing the corporate veil . . . is the rare exception, applied only in cases of fraud or certain other exceptional circumstances."); *see also Wenske v. Blue Bell Creameries*, No. CV 2017-0699-JRS, 2018 WL 5994971, at *6 (Del. Ch. Nov. 13, 2018) ("A parent corporation is not liable for the acts of its subsidiary merely because it owns (and votes) a majority of the subsidiary's stock or shares common shareholders, directors or officers with the subsidiary. Nor will conclusory allegations that the parent's management exclusively dominated and controlled the subsidiary's management."); *Oehme, van Sweden & Associates, Inc. v. Maypaul Trading & Services Ltd.*, 902 F. Supp. 2d 87, 98 (D.D.C. 2012) (recognizing that simply showing claims are intertwined is insufficient and, rather, the moving party must prove the party sought to be bound "knowingly seek[s] and obtain[s] direct benefits from [the] contract."); *Everett v. Paul Davis Restoration, Inc.*, 771 F.3d 380, 383–84 (7th Cir. 2014) ("a benefit derived from the agreement itself is direct. However, a benefit derived from the exploitation of the contractual relationship of parties to an agreement, but not the agreement itself is indirect.").

63.    Ultimately, regardless of the "condition" Defendant chooses to advance, he cannot meet his burden to require VIG to arbitrate:

a.    Incorporation by Reference: There are no contracts between VIG and Defendant and, thus, Defendant cannot prove the Franchise Agreement has been incorporated by reference to a separate agreement binding VIG to arbitrate. *See Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995) ("A nonsignatory may compel arbitration against a party to an arbitration agreement when that party has entered into a separate contractual relationship with the nonsignatory which incorporates the existing arbitration clause."); *Legacy Wireless Services, Inc. v. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045, 1053 n. 2 (D. Or. 2004) (declining to consider assertions of incorporation by reference because the moving party did not allege the contract it sought to incorporate).

b.    Assumption: There are no agreements between VIG and Defendant and, thus, Defendant cannot prove VIG has assumed the Franchise Agreement. *See Thomson-CSF, S.A.*, 64 F.3d at 777 ("In the absence of a signature, a party may be bound by an arbitration clause if its subsequent conduct indicates that it is assuming the obligation to arbitrate."); *Legacy Wireless Services, Inc.*, 314 F. Supp. 2d at 1053 n. 2 (declining to consider assertions of incorporation by reference because the moving party did not allege an agreement the non-moving party had assumed).

c.    Agency: Neither VIG, the Investment Funds it manages, nor the Holding Companies that own a minority interest in Zippy have ever had an interaction with Defendant Brian Poggi and, thus, Defendant cannot prove VIG was an agent of Zippy involved in the signing of the Franchise Agreement. *See Bel-Ray Co., Inc. v.*

*Chemrite (Pty) Ltd.*, 181 F.3d 435, 445 (3d Cir. 1999) ("under traditional agency principles, the only other way we understand that an agent can be bound by the terms of a contract is if she is made a party to the contract by her principal acting on her behalf with actual, implied, or apparent authority.").

d.  <u>Veil Piercing</u>: VIG does not own any interest in Zippy. VIG manages Investment Funds that own a partial interest in Holding Companies, which own a minority interest in Zippy. However, even assuming, *arguendo*, that a veil piercing claim could be brought by Defendant directly against VIG, Defendant cannot prove, and does not even allege, fraud, failure to observe corporate formalities, or improper control over Zippy with respect to the Franchise Agreement. *See Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 359 (5th Cir. 2003) ("The corporate veil may be pierced to hold an alter ego liable for the commitments of its instrumentality only if (1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil."); *Comer*, 436 F.3d at 1103 ("theories of veil-piercing and alter ego are inapplicable, given the absence of either fraud or a failure to observe corporate formalities.").

e.  <u>Estoppel</u>: VIG, as a manager of the Investment Funds, did not receive any benefit of the Franchise Agreement between Zippy and Defendant. Thus, Defendant certainly cannot meet its requisite burden to prove that VIG "knowingly exploited and directly benefitted from" the Franchise Agreement. *See Eclipse Consulting, Inc.*, 2018 WL 6735085, at *5 (D. Or. Nov. 13, 2018) (holding that a nonsignatory consulting firm hired to provide management services by a carpet installation

company could not be compelled to participate in the arbitration brought by a software consultation firm against the carpet installation company because it did not knowingly exploit or derive a direct benefit from the contract at issue in the arbitration proceeding); *Wallace, v. AmSurg Holdings, Inc.*, 6:15-CV-01548-MC, 2015 WL 7568592, at \*5 (D. Or. Nov. 24, 2015) (holding that two owners of an entity could not be estopped from avoiding arbitration because, "regardless of how closely affiliated that nonsignatory is with another signing party," claims being "'inextricably intertwined' is not enough to bind a nonsignatory.").

64.     In his Response, Defendant also alleged that VIG is bound to arbitrate on the basis of "offensive collateral estoppel." Ex. E (Defendant's Response) at 8. This allegation is facially deficient as it is not founded in the requisite fields of contract or agency. *See Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003). Nonetheless, VIG has not litigated this issue in the past, as would be required. *See Jack Faucett Associates, Inc. v. Am. Tel. & Tel. Co.*, 744 F.2d 118 (D.C. Cir. 1984) (holding that district court erred by finding issue preclusion because stipulations to the issue by parties in the prior case did not amount to actual litigation).

65.     Additionally, Defendant's assertion that VIG could be bound to arbitrate because of its purported actions in a different proceeding is preposterous. Defendant takes the illogical leap that a separate arbitration proceeding pertaining to "another Zippy franchisee" with a "substantially similar franchise agreement . . . constitutes a 'benefit' under the Franchise Agreement." *See* Ex. E (Defendant's Response) at 7–8. VIG is not a signatory to either franchise agreement, has not litigated any issues of arbitrability with regard to either, and, while VIG has not received a benefit from either, it is of no consequence. Defendant cannot contend that an

alleged benefit from a different agreement, between different parties, in a different proceeding is evidence of any benefit stemming from their own franchise agreement.

66.      Defendant has failed to assert any meaningful theory, or advance any evidence, that would require VIG, a non-signatory, to arbitrate the claims brought by Defendant. Defendant, however, seeks to circumvent that need by refusing to seek relief in a court. VIG, on the other hand, can successfully establish that it is not a party to the Franchise Agreement or its arbitration provision which formed the basis for Defendant's commencement of the Arbitration proceeding.

## C. VIG Lacks Any Other Avenue To Stop This Unlawful Proceeding.

67.      VIG reasonably fears that if the arbitration demanded by Defendant is not enjoined, Plaintiff will be deprived of a fundamental right of access to the courts.

68.      Unless the injunction is issued to prevent the arbitration demanded by Defendant, VIG will suffer immediate and irreparable injury for which it has no adequate remedy at law as there are no quantifiable damages that will fully compensate VIG for that injury. *See UBS Sec., LLC v. Voegeli*, 405 F. App'x 550, 552 (2d Cir. 2011) ("Being forced to arbitrate a claim one did not agree to arbitrate constitutes an irreparable harm for which there is no adequate remedy at law.") (internal quotations omitted); *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 208–09 (1991) ("a party cannot be forced to arbitrate the arbitrability question.") (internal quotations omitted).

69.      Should the demanded arbitration proceed, VIG will be subjected to arbitration under an agreement to which it is not a party and did not consent. The AAA has effectively consented to a panel of arbitrators determining its own jurisdiction over VIG. *See* Ex. C (AAA Determination). Because VIG is not a signatory to the Franchisee Agreement and has no

relationship with Defendant, contractual or otherwise, Defendant cannot articulate a claim against VIG, much less a basis for binding it to arbitration.

70.      Defendant has made clear that it will continue to seek relief from the AAA, rather than courts, in stark contradiction to the law. Further, Defendant's request does more than simply circumvent the proper procedure and improperly shift the Defendant's burden of proof to VIG. Defendant's request also seeks to maintain VIG's involvement in the arbitration if it opposes his erroneous facts. *See* Ex. E (Defendant's Response) at 2 ("If Virgo disputes the pleaded facts, we request the opportunity to conduct discovery on the issues raised."). This action, coupled with Defendant's refusal to seek relief in court, places VIG in a paradoxical position—oppose the erroneously pled facts and become involved in the arbitration or maintain its objection to the AAA's jurisdiction and allow Defendant to proceed with unopposed erroneously pled facts. *Cf. Sands Bros. & Co., Ltd. v. Zipper*, 03 CIV. 7731 (VM), 2003 WL 22439789, at *1 (S.D.N.Y. Oct. 27, 2003) (internal citation omitted) ("As a general principle, no party may be required to submit to arbitration any dispute that it has not agreed to arbitrate. Nevertheless, courts have repeatedly held that a party, through its conduct, may waive its right to object to going forward with an arbitration even if not contractually bound to do so."). Without preliminary injunctive relief from this Court, VIG will have to choose from those unworkable options.

71.      This threatened injury to VIG greatly outweighs whatever damage the proposed injunction may cause the opposing party and an order enjoining arbitration would serve to protect VIG's rights and the public interest. By pursuing the AAA's ruling on the question of arbitrability as to his own claims against VIG, Defendant is ignoring federal law and evading a rule this Court, for which VIG entitled.

**WHEREFORE** Plaintiff respectfully requests that this Court enter an order enjoining Defendant Brian Poggi from proceeding with its demanded arbitration.

DATED this 29th day of May, 2020.

K&L GATES LLP

By   *s/Philip Guess*
Philip Guess, OSB #176408
phil.guess@klgates.com
Meredith Bateman, OSB #192273
Email: meredith.bateman@klgates.com

Andrea L. Kim, Texas Bar No. 00798327, *pro hac vice pending*
andrea@dtlawyers.com
Sarah J. Ring, Texas Bar No. 24056213, *pro hac vice pending*
sarah@dtlwayers.com
William N. Haacker, Texas State Bar No. 24113709, *pro hac vice pending*
will.haacker@dtlawyers.com
DANIELS & TREDENNICK LLP
6363 Woodway Drive, Suite 965
Houston, Texas 77057
Telephone: (713) 917-0024/Fax: (713) 917-0026

*Attorneys for Respondent Virgo Investment Group, LLC*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, _Robert Pracusin_, declares under the penalty of perjury:

1. I am _COO_ for Plaintiff Virgo Investment Group, LLC;

2. I have read the foregoing Verified Complaint and know the contents thereof; and

3. I believe the matters to be true based on personal knowledge and on documents and information obtained from employees and representatives of Plaintiff.

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully Submitted,

_[signature]_

Date: _5/21/20_
Place: _Summit, NJ_