IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **VIRGO INVESTMENT GROUP, LLC**, <br><br> Plaintiff, <br><br> v. <br><br> **BRIAN POGGI**, <br><br> Defendant. | Case No. 3:20-cv-00856-IM <br><br> **OPINION AND ORDER** |

Andrea Kim, Sarah Ring & William Haacker, Daniels & Tredennick, LLP, 6363 Woodway Dr., Suite 700, Houston, TX 77057; Meredith Bateman & Philip M. Guess, K&L Gates LLP, One SW Columbia, Suite 1900, Portland, OR 97204. Attorneys for Plaintiff.

Joanna T. Perini-Abbott, Angeli Law Group LLC, 121 SW Morrison Street, Suite 400, Portland, OR 97204; Matthew T. Kemp & Peter Ray Silverman, Shumaker, Loop & Kendrick LLC, 1000 Jackson Street, Toledo, OH 43604-5573. Attorneys for Defendant.

**IMMERGUT, District Judge.**

This matter comes before the Court on Plaintiff Virgo Investment Group, LLC's ("VIG" or "Virgo") Motion for Summary Judgment. ECF 47. This Court has determined that oral argument would not help resolve the matter and issues this opinion and order based on the briefing. *See* LR 7-1(d).

In the instant Motion, Plaintiff VIG seeks an order declaring that it cannot be bound to participate in the arbitration that Defendant Poggi brought before the American Arbitration Association ("AAA") in Washington, D.C., against Zippy Shell, Inc. ("Zippy") and Plaintiff VIG, *et al*. on March 5, 2020. ECF 47 at 8-9, 39. Plaintiff VIG argues in its Motion that it cannot be bound as a nonsignatory to an arbitration clause in a franchise agreement based on the three theories that Defendant Poggi had asserted as his affirmative defenses: alter ego, estoppel, and "principles of res judicata and/or collateral estoppel." *See* ECF 28 at 8; ECF 47 at 18–39. In response, Defendant Poggi addresses only the alter ego theory and asserts that disputed facts require denial of the instant Motion. ECF 57 at 13–24.

As described in more detail below, the parties concede that Plaintiff VIG was not Zippy's alter ego at the time the franchise agreement was entered into. Consequently, under the facts of this case, Plaintiff VIG cannot be bound by that agreement's arbitration provision under an alter ego theory. And even if alter ego liability were possible, Defendant Poggi does not allege any injustice or inequity sufficient to justify piercing the corporate veil under Delaware or District of Columbia law. As Defendant Poggi emphasizes in his brief, the only issue before this Court is whether he "should have the chance to litigate claims against Zippy and [Plaintiff] VIG in a single arbitration, rather than bringing separate actions." ECF 57 at 19.

Furthermore, this Court finds that Defendant Poggi has abandoned his asserted affirmative defenses of estoppel and res judicata/collateral estoppel by failing to mention or argue those theories in his opposition brief. Therefore, this Court will not consider those theories. *Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 & n.4 (9th Cir. 2005) (noting that the district court properly reached only one claim because the party "abandoned her other two claims by not raising them in opposition to the County's motion for summary judgment").

PAGE 2 – OPINION AND ORDER

Based on the arguments and evidence presented, Plaintiff VIG's Motion for Summary Judgment is GRANTED.

## BACKGROUND

### A. Overview

Plaintiff VIG was formed on May 4, 2009, as a Delaware limited liability company for the purpose of providing investment management and/or advisory services to investment funds. ECF 48 at ¶ 2. Plaintiff VIG is headquartered in Burlingame, California. *Id*. It advises investment funds pursuant to independent Investment Advisory Agreements. *Id*. at ¶ 4.

Zippy is a Delaware corporation that provides moving and mobile self-storage services. ECF 49-1 at 7; ECF 1 at ¶ 19. Zippy licenses its business to independent companies through the sale of franchises. ECF 1 at ¶ 19.

Plaintiff VIG manages several investment funds, including certain funds—Virgo Societa Partnership III (Onshore), L.P. ("Onshore") and Virgo Societas Direct III, Ltd. ("Direct") (collectively, "Investment Funds")—which, in June 2015, invested in a special purpose Holding Company named Virgo-Terrapin, LLC ("Terrapin"). ECF 1 at ¶ 18; ECF 48 at ¶ 3. The sole member of the investment fund Direct is Virgo Societas Partnership III (Offshore), L.P. ("Offshore"). ECF 48 at ¶ 4. In June 2015, after the investment by Onshore and Direct, Terrapin directly purchased a minority interest in Zippy. ECF 1 at ¶ 18; ECF 48 at ¶ 3; ECF 48-3 at 2-5 (Zippy stock certificates held by Terrapin dated June 3, 2015). Terrapin's interest represented approximately 35% of Zippy's total outstanding stock. ECF 48 at ¶ 3.

The Investment Funds Onshore and Offshore (which is the sole member of Direct) are limited partnerships with many limited partners. *Id.* ¶ 4. Two affiliates of Plaintiff VIG own approximately a 1% interest in Onshore and Offshore. *Id*. Onshore and Offshore are highly diversified and invest in other independent businesses across various industries including

PAGE 3 – OPINION AND ORDER

aviation, media, energy, healthcare, small business factoring, agricultural banking, and commercial finance. *Id*. Plaintiff VIG's only relation to the Investment Funds is to provide investment advisory and management services. *Id*. at ¶ 5.

In September 2015, Defendant Poggi became a franchisee of Zippy, and those parties entered into a Franchise Agreement that included an arbitration clause. ECF 1 at ¶¶ 20, 24–25. Both parties to this case agree that Plaintiff VIG is a non-signatory to the Franchise Agreement. *Id.* at ¶¶ 26–27; ECF 28 at ¶ 27. Defendant Poggi also agrees with Plaintiff VIG, that at the time the Franchise Agreement was entered into, Plaintiff VIG was not Zippy's alter ego and did not exercise control over Zippy. Nevertheless, Defendant Poggi argues that the alleged development of an alter ego relationship after the signing of the franchise agreement now binds Plaintiff VIG to the arbitration clause in that agreement. *See* ECF 57 at 22-24.

After Terrapin's initial investment in Zippy in June 2015, Terrapin purchased additional shares of Zippy. ECF 48 at ¶ 6. Prior to Zippy's 2018 acquisition of another storage company, 1-800-Pack-Rat, LLC ("Pack-Rat"), Terrapin's ownership interest in Zippy did not exceed 46%. *Id*; *see also* ECF 48-8 at 2 (pre-acquisition chart showing Terrapin's equity ownership of Zippy at 45.9%). At all times prior to Zippy's 2018 acquisition of Pack-Rat, Terrapin was the only entity affiliated with Plaintiff VIG that owned an interest in Zippy. ECF 48 at ¶ 6.

## B. The Pack-Rat Acquisition

In October 2017, Zippy and Plaintiff VIG became aware of a potential opportunity for Zippy to acquire Pack-Rat. *See* ECF 56-2 at 1–4; ECF 56-1 at 17–20. Over the course of the next seven months, Plaintiff VIG worked closely with Zippy in completing due diligence and financing the acquisition. Ultimately, Zippy raised $130.3 million from equity investors with Plaintiff VIG's assistance and incurred $70 million in debt. ECF 48 at ¶ 7.

The acquisition of Pack-Rat closed on June 4, 2018. ECF 56-2 at 119. Defendant Poggi alleges that Zippy's acquisition of Pack-Rat "torpedoed" his business, and accordingly he seeks to sue both Zippy and Plaintiff VIG for "the fallout from that merger." ECF 57 at 4–5.

## C. The Arbitration Proceeding

On March 5, 2020, Defendant Poggi filed an arbitration demand with AAA, naming Plaintiff VIG as a respondent. ECF 1 at ¶ 28. Defendant Poggi conceded that Plaintiff VIG is not a party to the Franchise Agreement but argued that Plaintiff VIG may be compelled to participate in the arbitration under the principles of veil piercing and estoppel. *Id.* at ¶ 33. In the arbitration, Defendant advances five direct claims against Plaintiff VIG: (1) tortious interference with contract; (2) tortious interference with prospective business advantage; (3) violation of the Racketeer Influence and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(c); (4) violation of 18 U.S.C. § 1962(d) of RICO through its conspiracy to participate in the Zippy Enterprise; and (5) unfair competition. ECF 1-5 at 4. Defendant Poggi also alleges in the arbitration that Plaintiff VIG is liable for claims advanced against Zippy under an alter ego theory. *Id.*

On May 29, 2020, Plaintiff VIG filed a complaint with this Court seeking declaratory and injunctive relief. ECF 1 at 1. Plaintiff VIG seeks a declaration that it is not a party to any arbitration agreement with Defendant Poggi and an order staying and enjoining the arbitration pending against it. *Id*. at ¶ 12. Defendant Poggi argues that "given [Plaintiff] VIG's legal and practical control over Zippy, coupled with its full participation and direction in the [Pack-Rat] merger process, equity demands that [Plaintiff VIG] continue to participate in an arbitration that centers on the fallout from that merger." ECF 57 at 4.

On August 21, 2020, Plaintiff moved for summary judgment, seeking a declaration from this Court that Plaintiff is not subject to the franchise agreement's arbitration clause.[1] ECF 47 at 8, 39.

## LEGAL STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001).

Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the [non-movant's] position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

The evidence presented by the parties must be admissible. *Wady v. Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1065 (C.D. Cal. 2002) (citing Fed. R. Civ. P. 56(e)). Further, the non-moving party may not rest on conclusory or speculative evidence but

---

[1] Plaintiff VIG states that Defendant Poggi "has never filed a motion to compel arbitration and left VIG to seek [] declaratory relief (a judicial recognition that it is not bound to participate in the Arbitration)." ECF 47 at 17.

PAGE 6 – OPINION AND ORDER

rather must "set forth specific facts in support of [its] . . . theory." *Thornhill Pub. Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979) (citing Fed. R. Civ. P. 56(e)).

## DISCUSSION

Plaintiff, a non-signatory to the arbitration agreement, seeks a declaration that it is *not* bound to arbitrate under that agreement.[2] The Federal Arbitration Act (the "Act"), 9 U.S.C. § 2, declares "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "However, the 'liberal federal policy regarding the scope of arbitrable issues is inapposite' when the question is 'whether a particular party is bound by the arbitration agreement.'" *Eclipse Consulting, Inc. v. BDO USA, LLP*, No. 3:17-cv-826-AC, 2018 WL 6735085, at *5 (D. Or. Nov. 13, 2018) (quoting *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006)) (emphasis omitted). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) (citations omitted).

"'[N]onsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles.'" *Comer*, 436 F.3d at 1101 (quoting *Letizia v. Prudential Bache Secs., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986)). "Among these principles are 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Comer*, 436 F.3d at 1101 (citation and quotation marks omitted). "In addition, nonsignatories can enforce arbitration agreements as third party beneficiaries." *Id*. (citation omitted).

---

[2] As such, the posture of this case is different from most cases involving similar facts, wherein the plaintiff seeks to *compel* another party to arbitrate.

PAGE 7 – OPINION AND ORDER

### A. No Alter Ego Status at Time of Agreement

Defendant Poggi asserts that Plaintiff VIG may be compelled to arbitrate as the alter ego of Zippy, the signatory to the agreement, even though Plaintiff VIG was not Zippy's alter ego at the time the arbitration agreement was created and signed by Defendant Poggi and Zippy. ECF 57 at 22. It is undisputed that at the time Zippy and Defendant Poggi entered into the franchise agreement including the arbitration provision, Plaintiff VIG was not the alter ego of Zippy. *See id*. at 24.

Plaintiff VIG cannot be bound by the arbitration provision of the Franchise Agreement under an alter ego theory unless Zippy entered into that agreement as Plaintiff VIG's alter ego. *See Fisser v. Int'l Bank*, 282 F.2d 231, 235 (2d Cir. 1960); *see also Tellium, Inc. v. Corning Inc*., No. 03 Civ. 8487(NRB), 2004 WL 307238, at *7 (S.D.N.Y. Feb. 13, 2004) (finding that at the time the arbitration agreement was entered into, "there was absolutely no corporate relationship between the parties" and accordingly there was no "inference that Astarte was acting as [nonsignatory] Tellium's alter ego") (citing *Fisser*, 282 F.2d at 238).

Here, there is no dispute that at the time Zippy and Defendant Poggi entered into their franchise agreement, Zippy was not Plaintiff VIG's alter ego. Accordingly, Plaintiff VIG cannot be bound on an alter ego theory to arbitrate.

### B. Defendant Poggi Does Not Allege Inequity Sufficient to Pierce the Corporate Veil

Even if a finding of alter ego were possible, Defendant Poggi's alter ego theory would fail as a matter of both Delaware and District of Columbia law because he does not allege sufficient injustice or inequity to justify this equitable remedy.

1. **Choice of Law**

"When a federal court sitting in diversity hears state law claims, the conflicts laws of the forum state are used to determine which state's substantive law applies."[3] *Wehlage v. EmpRes Healthcare Inc.*, 821 F. Supp. 2d 1122, 1126 (N.D. Cal. 2011) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 661 (9th Cir. 1999)) (internal quotation marks omitted). The parties disagree on which jurisdiction's law should govern the alter ego issue. Plaintiff VIG contends that Delaware law should govern the alter ego analysis because whether to pierce a company's corporate veil is an internal affairs doctrine question, and Zippy, its owners, and Plaintiff VIG are incorporated in Delaware. ECF 47 at 19–20. Defendant Poggi contends that District of Columbia law should govern the alter ego analysis because the franchise agreement, to which Plaintiff VIG is a non-signatory, has a choice of law clause selecting D.C. law. ECF 57 at 14–15. Neither party argues that Oregon law governs the alter ego issue.

In Oregon, "[t]he threshold question in a choice-of-law problem is whether the laws of the different states actually conflict. The proponent of applying a different state's law has the obligation to identify a material difference between Oregon law and the law of the other state." *Portfolio Recovery Assocs., LLC v. Sanders*, 292 Or. App. 463, 467–68 (2018) (internal citations and quotation marks omitted). Here, neither party argues that Oregon law applies. This Court finds, at Oregon's threshold choice-of-law inquiry, that Plaintiff VIG has demonstrated that it cannot be bound to arbitrate as Zippy's alter ego under the law of the District of Columbia or

---

[3] The parties agree that this Court has subject matter jurisdiction based on both diversity and federal question. ECF 1 at ¶¶ 13–14; ECF 28 at ¶¶ 13–14. The parties assume that Oregon choice of law governs this Court's decision. *See* ECF 47 at 19–20; ECF 57 at 14–15 (discussing case applying Oregon choice of law rules).

Delaware, so there is not a "meaningful and germane difference between the two jurisdictions." *Machado-Miller v. Mersereau & Shannon, LLP*, 180 Or. App. 586, 591 (2002).

The Court will apply Delaware law and note, where relevant, distinctions and similarities between Delaware and D.C. law.

### 2. Alter Ego Analysis

Delaware law "requires that the corporate structure cause fraud or similar injustice" to pierce the veil. *Outokumpu Eng'g Enters., Inc. v. Kvaerner EnviroPower, Inc*., 685 A.2d 724, 729 (Del. Super. Ct. 1996). "In short, the test applied under Delaware law is two pronged: (i) whether the entities in question operated as a single economic entity, and (ii) whether there was an overall element of injustice or unfairness." *In re The Heritage Org., L.L.C*., 413 B.R. 438, 512 (Bankr. N.D. Tex. 2009); *see also Wallace ex rel. Cencom Cable Income Partners II, Inc., v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999).[4]

Based on the evidence and arguments presented, Defendant Poggi cannot satisfy the second prong of Delaware's two-pronged alter ego test. Accordingly, this Court need not address the alter ego test's first prong of "whether the entities in question operated as a single economic entity." *In re The Heritage Org*., 413 B.R. at 512 (applying Delaware law); *see also TAC-*

---

[4] For its part, the D.C. veil-piercing doctrine requires "(1) unity of ownership and interest [between the entities], and (2) [either] use of the corporate form to perpetrate fraud or wrong, or other considerations of justice and equity justify it." *TAC-Critical Sys., Inc. v. Integrated Facility Sys., Inc*., 808 F. Supp. 2d 60, 67 (D.D.C. 2011) (internal citations and quotation marks omitted) (alterations in original). "A commonly referenced, though not exhaustive, list of factors for determining when veil-piercing is appropriate includes (1) whether corporate formalities have been disregarded, (2) whether corporate funds and assets have been extensively intermingled . . ., (3) inadequate initial capitalization, and (4) fraudulent use of the corporation to protect [an entity] from the claims of creditors." *Id*. (internal quotation marks and citations omitted) (alterations in original). "Since it is equitable in nature, the [alter ego] doctrine can be invoked only where equity requires the action to assist a third party." *Estate of Raleigh v. Mitchell*, 947 A.2d 464, 471 (D.C. Cir. 2008) (quotation marks and citations omitted).

*Critical Sys.*, 808 F. Supp. 2d at 67 (stating D.C. law's first prong is "unity of ownership and interest [between the entities]") (alterations in original).

At the second Delaware prong, Defendant Poggi does not show that Zippy's "use of the corporate form would, if left unchecked, work as a fraud or something in the nature of a fraud." *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 267 (D. Del. 1989). Defendant Poggi argues that an "alter ego finding is equitable in these circumstances" because (1) Plaintiff VIG sought to advance its own economic interest and portrayed itself as Zippy's alter ego to investors; (2) Defendant Poggi would like to "have the chance to litigate claims against Zippy and [Plaintiff] VIG in a single arbitration, rather than bringing separate actions"; and (3) Plaintiff VIG has not contested arbitrability with respect to a dispute with a different franchisee. ECF 57 at 19–20. Defendant Poggi has cited no authority under any jurisdiction supporting his theories of inequity, *see id.*, and the Court finds that those theories as presented do not satisfy the alter ego test under either Delaware or D.C. law.[5]

Notably, Defendant Poggi's suggestion that requiring it to litigate in two fora on his underlying claims constitutes injustice is utterly without support. ECF 46, Transcript of Hr'g on Mot. to Compel, at 12:8–18 (July 30, 2020); ECF 57 at 19–20. Defendant Poggi cites no authority, applying any jurisdiction's alter ego doctrine, for the proposition that such an inconvenience rises to the level of injustice, inequity, or unfairness required to pierce a corporation's veil. *See, e.g., Outokumpu Eng'g Enterprises*, 685 A.2d at 729; *Mobil Oil Corp.*, 718 F. Supp. 260 at 270 ("[R]equiring Mobil to enforce its patent rights against Linear in another

---

[5] The D.C. veil-piercing doctrine's second prong requires "use of the corporate form to perpetrate fraud or wrong, or other considerations of justice and equity justify [piercing the veil]." *TAC-Critical Sys.*, 808 F. Supp. 2d at 67 (internal quotation marks and citations omitted).

PAGE 11 – OPINION AND ORDER

forum is not the kind of injustice—if, indeed, it is an injustice at all—which warrants piercing the corporate veil.").

Defendant Poggi does not argue or show that Zippy's *corporate form is being used* to perpetrate a fraud or injustice.[6] *See Wallace*, 752 A.2d at 1184 ("Piercing the corporate veil under the alter ego theory 'requires that the corporate structure cause fraud or similar injustice.'") (citation omitted). Defendant Poggi may, and has, initiated an action against Zippy. Defendant Poggi does not argue, for example, that Zippy is judgment-proof or that Plaintiff VIG is deliberately attempting to escape some specific liability. *See Mobil Oil Corp*, 718 F. Supp. at 269. Rather, Defendant Poggi presents the issue before this Court as only whether Plaintiff VIG is required to defend itself against Poggi's claims before an arbitrator, rather than a judge. *See* ECF 57 at 19.

Lastly, Defendant Poggi states that Plaintiff "VIG has admitted that in a similar arbitration brought by a different franchisee, Marcus Flinders, it has not contested arbitrability in federal court or in the arbitration. It would be inequitable for VIG to benefit from choosing to litigate the Flinders case in arbitration, but forcing Poggi to proceed in federal court." ECF 57 at 20. Defendant Poggi does not develop this theory or cite any legal authority for it justifying piercing the corporate veil, and therefore the Court is unpersuaded by it.

---

[6] In practice, D.C. appears to require a similar showing. *See Estate of Raleigh*, 947 A.2d at 471 (quoting with approval a case "explaining that piercing the corporate veil requires, *inter alia*, evidence of use of the corporate form to perpetuate fraud or wrong" and noting that the doctrine is used "to avoid an injustice resulting from someone else using the corporate form") (citation and quotation marks omitted). As such, Defendant Poggi cannot satisfy D.C. law's second prong for largely the same reasons.

PAGE 12 – OPINION AND ORDER

Accordingly, Plaintiff VIG is not bound by the arbitration provision in the franchise agreement between Defendant Poggi and Zippy.[7]

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment, ECF 47, is GRANTED.

**IT IS SO ORDERED**.

DATED this 28th day of January, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

---

[7] For substantially the same reasons, Defendant Poggi's alter ego theory fails under D.C. law. Defendant Poggi may bring, and indeed has brought, claims against Zippy based on the alleged breach of the franchise agreement. *See* ECF 1-4 at 33. Defendant Poggi has not argued that Zippy is judgment-proof and that it cannot recover on those claims. *See United States v. TDC Mgmt. Corp.*, 263 F. Supp. 3d 257, 272 (D.D.C. 2017) (explaining that potential inability to collect a judgment may justify piercing the corporate veil in D.C.). Defendant Poggi has not demonstrated that "equity requires the action to assist a third party." *Id*. (quoting *Estate of Raleigh*, 947 A.2d at 471) (quotation marks omitted); *see also B & H Nat. Place, Inc. v. Beresford*, 850 F. Supp. 2d 251, 260 (D.D.C. 2012) ("[P]laintiffs have failed to provide sufficient evidence that the entities were used to perpetuate fraud or other wrongs. . . .").