IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **VIRGO INVESTMENT GROUP, LLC**, <br><br>  Plaintiff, <br><br> v. <br><br> **BRIAN POGGI**, <br><br>  Defendant. | Case No. 3:20-cv-00856-IM <br><br> **OPINION AND ORDER ON PLAINTIFF'S MOTION FOR FEES AND COSTS** |

Andrea Kim, Sarah Ring & William Haacker, Daniels & Tredennick, LLP, 6363 Woodway Dr., Suite 700, Houston, TX 77057; Meredith Bateman & Philip M. Guess, K&L Gates LLP, One SW Columbia, Suite 1900, Portland, OR 97204. Attorneys for Plaintiff.

Joanna T. Perini-Abbott, Angeli Law Group LLC, 121 SW Morrison Street, Suite 400, Portland, OR 97204; Matthew T. Kemp & Peter Ray Silverman, Shumaker, Loop & Kendrick LLC, 1000 Jackson Street, Toledo, OH 43604-5573. Attorneys for Defendant.

**IMMERGUT, District Judge.**

Before this Court is Plaintiff Virgo Investment Group's ("VIG") Motion for Attorney's Fees and Costs, ECF 70, after prevailing on its Motion for Summary Judgment, ECF 47.[1] VIG

---

[1] Plaintiff also submitted a Bill of Costs. ECF 73; ECF 74. Defendant Poggi did not oppose. Nevertheless, this Court "may award only those costs enumerated in [28 U.S.C.] § 1920 unless otherwise provided." *Christian v. Umpqua Bank*, No. 3:16-CV-01938-BR, 2018 WL 3364658, at *2 (D. Or. July 10, 2018) (citing *Grove v. Wells Fargo Fin. California, Inc.*, 606 F.3d 577, 579 (9th Cir. 2010)). VIG seeks $1,957.10 in total, $900 of which is attributable to

PAGE 1 – OPINION AND ORDER

requests $218,334.50 in attorney's fees and $2,502.60 in nontaxable costs based on Oregon Revised Code § 20.096. ECF 70 at 5-8; ECF 77 at 1-7, 10; ECF 71 at 2; ECF 75 at 2.

Defendant Poggi, an Oregon resident and franchisee of Zippy Shell, Inc. ("Zippy"), had initiated arbitration proceedings in the District of Columbia against Plaintiff VIG and Zippy based on an arbitration provision in a franchise agreement between Poggi and Zippy. VIG brought an action before this Court seeking declaratory relief that it was not bound by the arbitration provision as a non-signatory to the franchise agreement. ECF 1. VIG filed a summary judgment motion with this Court to determine whether VIG could be bound to the franchise agreement between Poggi and Zippy as an alter ego of Zippy. ECF 47. In support of VIG's position that it could not be bound by the arbitration provision, VIG argued that Delaware law should apply, and that under Delaware law VIG is not an alter ego of Zippy. Therefore, VIG argued, it could not be required to arbitrate under the franchise agreement between Zippy and Defendant Poggi. This Court agreed[2] and concluded that VIG was not Zippy's alter ego at the time the franchise agreement was entered into and that Defendant Poggi had not alleged the

---

three *pro hac vice* motions. ECF 73 at 1; ECF 74-1 at 2. The Ninth Circuit has explicitly held that *pro hac vice* fees are not taxable costs. *Kalitta Air L.L.C. v. Cent. Texas Airborne Sys. Inc.*, 741 F.3d 955, 957-58 (9th Cir. 2013); *see also Umpqua Bank*, 2018 WL 3364658, at *2 (finding same). Accordingly, the Court denies that request. Plaintiff's remaining requests in the Bill of Costs are the $400 filing fee, $617.10 for transcripts necessarily obtained for use in the case, and $40 for witnesses. ECF 73 at 1; ECF 74-1 at 2. The Court finds those items appropriate and necessarily incurred. Accordingly, the Court AWARDS costs to Plaintiff VIG in the amount of $1,057.10 and directs the Clerk to tax these costs against Defendant Poggi.

[2] This Court found at the threshold step of Oregon's choice of law analysis that there was no meaningful difference between D.C. and Delaware law. ECF 68 at 9-10. The Court applied Delaware law and noted relevant distinctions and similarities between D.C. and Delaware law. *Id*. at 10-13. Both parties agree that this Court applied Delaware law to the substantive issue in dispute. *See* ECF 77 at 3 ("[T]his Court [ ] used Delaware law to assess the alter ego question); ECF 76 at 4. Notably, neither party argued that Oregon law governs the alter ego question. *See* ECF 68 at 9-10.

PAGE 2 – OPINION AND ORDER

requisite injustice to pierce Zippy's corporate veil and bind VIG to the franchise agreement's terms.

Now, in requesting fees, VIG argues that Oregon law governs the issue of whether VIG is entitled to attorney's fees, rather than Delaware law. Defendant Poggi responds that this Court must apply Delaware law, the same law that this Court applied to the substantive dispute in this case. ECF 76 at 4-5. For the following reasons, VIG's Motion is DENIED.

### A. Choice of Law

The parties agree that for *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and choice of law purposes, this is a diversity action and Oregon is the forum state. ECF 70 at 5 n.1; ECF 76 at 3. Oregon courts consider "the issue of entitlement to attorneys' fees" to be substantive rather than procedural, and so "a choice of law analysis must be made." *Medford Corp. v. Crawford & Co.*, 119 F.3d 6, 1997 WL 408035, at *5 (9th Cir. 1997) (Table) (citing *Seattle-First Nat'l Bank v. Schriber*, 625 P.2d 1370, 1373 (Or.Ct.App. 1981)); *see also Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 973-74 (9th Cir. 2013).

In Oregon, courts generally evaluate "the contractual rights and duties of the parties" under "the law or laws that the parties have chosen." ORS 15.350(1). The law chosen by the parties "does not apply to the extent that its application would . . . "[c]ontravene an established fundamental policy embodied in the law that would otherwise govern the issue in dispute . . . ." ORS 15.355.[3]

---

[3] Though this Court applies the choice of law analysis and considers Oregon law, it notes at the outset that VIG has failed to establish that Oregon law would even be the "law that would otherwise govern the issue in dispute," instead of D.C. or Delaware law. VIG has not engaged with the attorney's fee law, or the relevant policies underlying it, of either D.C. or Delaware. *See* ORS 15.360; ORS 15.355. Indeed, VIG does not cite or engage with any of the multiple Oregon statutory provisions outlining the Oregon courts' choice of law analysis. The only Oregon statute that VIG discusses is the fee provision it asks this Court to apply.

PAGE 3 – OPINION AND ORDER

B. **The Law Chosen by the Parties**

There are two potential candidates for the parties' "choice of law" with respect to fees: Delaware and D.C. The franchise agreement chooses District of Columbia law. ECF 1-1 at 36-37. On summary judgment, VIG argued that Delaware law governs the substantive question of whether VIG is bound as Zippy's alter ego to the franchise agreement. *See, e.g.,* ECF 47 at 19-21.

D.C. law could be the parties' "choice" for purposes of Oregon's statutory analysis because that is the contract's choice of law. VIG argues that it was not a party to the franchise agreement, and so it did not choose D.C. law. ECF 77 at 4. However, VIG premised its fees argument on what Poggi would be entitled to if he had succeeded in binding VIG to the franchise agreement. *See, e.g.,* ECF 70 at 6 (arguing that ORS 20.083 "is applicable on its terms where [Poggi] could have obtained attorney fees if [he] had prevailed"). If Poggi had succeeded in demonstrating that VIG was bound to the franchise agreement, D.C. law would be the relevant choice of law for purposes of Oregon's choice of law analysis.

On the other hand, this Court determined at VIG's urging that the alter ego question is governed by Delaware law. ECF 68 at 10. The Ninth Circuit has interpreted Oregon's choice of law analysis in this context as follows: "the state law chosen by the parties to control the substantive issue under dispute also controls the issue of attorney's fees, unless doing so would circumvent a fundamental public policy of Oregon law." *Avery v. First Resol. Mgmt. Corp.*, 568 F.3d 1018, 1023 (9th Cir. 2009) (citing *Fiedler v. Bowler*, 117 Or.App. 162 (1992)); *see also Northon v. Rule*, 637 F.3d 937, 938-39 (9th Cir. 2011) (applying Oregon law to fee motion after Oregon anti-SLAPP statute dismissal); *Alaska Rent-A-Car*, 738 F.3d at 964, 970, 973-74 (stating in Alaska forum diversity action where court applied New York law to substantive issues, that if

PAGE 4 – OPINION AND ORDER

"the Alaska Supreme Court would consider its attorney's fees rule substantive, then New York law . . . would apply"). Here, the substantive issue under dispute, the alter ego question, was decided under Delaware law.

This Court concludes that under either potential "choice" of law, VIG is not entitled to fees.

### 1. D.C. Law

"As a general matter, the District of Columbia follows the American Rule under which every party to a case shoulders its own attorneys' fees, and recovers from other litigants only in the presence of statutory authority, a contractual arrangement, or certain narrowly-defined common law exceptions, such as the conventional bad faith exception." *Harris v. Howard Univ., Inc.*, 48 F. Supp. 2d 43, 45 (D.D.C. 1999) (quoting *Oliver T. Carr Co. v. United Techs. Comm. Co.*, 604 A.2d 881, 883 (D.C.1992)) (quotation marks and ellipses omitted). VIG does not engage with D.C. law and does not explain how it might be entitled to fees under D.C. law. Without such argument or authority, VIG has not satisfied its burden of proving its entitlement to fees. Accordingly, the general American Rule applies, and each party shoulders its own attorneys' fees.

### 2. Delaware Law

"Delaware follows the general rule that, regardless of the outcome of litigation, each party is responsible for paying his or her own attorneys' fees." *In re SS & C Techs., Inc. S'holders Litig.*, 948 A.2d 1140, 1149 (Del. Ch. 2008) (citation omitted). "This is commonly referred to as the American Rule and it has several recognized exceptions, including the 'bad faith' exception." *Id*. (citation omitted).

VIG's argument with respect to this law is that "[e]ven if Delaware law did apply, VIG may be entitled to its fees." ECF 77 at 4 n.1. However, VIG does not suggest that an exception to the American Rule, such as bad faith, applies in this case. *See, e.g., In re SS & C Techs.*, 948 A.2d at 1151-52 (awarding fees upon finding "an abuse of the judicial process and [ ] bad faith"). VIG cites a footnote in a recent Delaware Supreme Court opinion, in which the court noted that a party had attempted to defend a lower court's award of fees by arguing that the court "correctly followed a trend towards mutual fee-shifting provisions." *Washington v. Preferred Commc'n Sys., Inc.*, 157 A.3d 1226, 1229 n.12 (Del. 2017); *see* ECF 77 at 4 n.1. The court characterized this argument as the party "respectfully [ ] attempting to defend the Court of Chancery's ruling . . . by the only reasoning they could," while also "primarily argu[ing]" another ground to uphold the fee award. *Washington*, 157 A.3d at 1229. The court ultimately evaluated the text of the relevant fee provisions to determine if specific contractual conditions for fee shifting occurred. *Id.* at 1229-32. This context hardly evinces enthusiasm for VIG's mutuality argument and does not by itself justify awarding VIG fees under Delaware law. VIG does not develop its argument any further; indeed, VIG only argues that it "may" be entitled to fees under Delaware law. ECF 77 at 4 n.1. Accordingly, VIG has not established that it is entitled to fees under Delaware law.

### C. Applying Delaware or D.C. Law Does Not Circumvent a Fundamental Policy of Oregon

The application of either Delaware or D.C. law in this case does not circumvent Oregon's fundamental policy of protecting weak consumers from one-sided attorney fee provisions. VIG has not established that applying the law that the contracting parties chose, or the law that VIG itself argued governed the substantive issue in this case, would interfere with a fundamental policy of Oregon.

VIG argues that "Oregon law is the correct law to apply to attorney fees because Poggi is located in Oregon, because this lawsuit was initiated in Oregon, and because Oregon has [a] fundamental interest in preventing one-sided attorney fee provisions." ECF 77 at 4. However, Poggi initiated the arbitration underlying this lawsuit in D.C.; VIG, not Poggi, initiated this lawsuit in Oregon; and the applicable fee provision in the franchise agreement is not one-sided.[4] Even if it were one-sided, Oregon courts recognize the ability of parties of similar bargaining power to contract for the application of certain law to their disputes, even when that law would uphold one-sided fee provisions in the contract. *See Fiedler v. Bowler*, 117 Or. App. 162, 166 (1992). In such a case, the party seeking to impose Oregon law instead of the parties' choice must "establish[ ] a[ ] clear and overpowering policy reason to interfere with the parties' freedom to choose [another] law for this [substantive issue in dispute]." *Id*. at 166 (citations and quotation marks omitted); *see also Avery*, 568 F.3d at 1023.

Applying D.C. or Delaware law in this case to determine fees would not "circumvent a fundamental public policy of Oregon law." *Fiedler*, 117 Or. App. at 166. "The drafters of ORS 20.096 were principally concerned with protecting Oregon consumers who enter into contracts with sellers of goods and services that give the sellers the unilateral right to an award of prevailing party attorney fees." *Cap. One Bank v. Fort*, 242 Or. App. 166, 171 (2011) (citations

---

[4] There are two franchise agreement provisions argued in this Motion. The most relevant fees provision is in ¶ 13, the "General Provisions" paragraph, and provides: "If we are required to enforce this Agreement in a judicial proceeding, the party substantially prevailing in such proceeding shall be entitled to reimbursement of its costs and expenses, including reasonable accounting and legal fees as assessed by the court." ECF 1-1 at ¶ 13.7. The other provision, ¶ 12.4(f), which is included in the "Restrictive Covenants" paragraph, states: "You agree to pay our reasonable attorneys' fees and all other reasonable costs incurred by us in the prosecution of any action between the parties provided we prevail in said action." ECF 1-1 at ¶ 12.4(f). "You" refers to the franchisee, Poggi, and "our" and "us" refers to the franchisor, Zippy Shell. *See* ECF 1-1 at 5. ¶ 13.7, the fees provision most relevant to this case, is not a one-sided fees provision.

omitted). The provision was "directed to the inequality of bargaining power which is so common in many commercial transactions." *McMillan v. Golden*, 262 Or. 317, 320 (1972) (citation and quotation marks omitted). However, where parties of equal bargaining power exercise their "freedom to choose" a given law, Oregon's policy interest in protecting weak consumers entering contracts for goods and services from one-sided fee provisions does not supersede that choice. *Fiedler v. Bowler*, 117 Or. App. 162, 166 (1992); *see also Cap. One Bank v. Fort*, 242 Or. App. 166, 173-74 (2011) (concluding that Oregon law applied and distinguishing *Fiedler*, in which the "parties to the contract" were "not consumers entering a contract for goods or services" and "had equal bargaining power," from *Fort*, in which one party "had little, if any bargaining power," contract was sent on a "take-it-or-leave-it basis," and the agreement had "characteristics of a contract of adhesion"); *see also Seattle-First Nat. Bank v. Schriber*, 51 Or. App. 441, 449 (1981) (finding the "laudable public policy behind ORS 20.096" inapplicable where "none of the parties was a resident of Oregon at the time of making the contract" because the "fortuity of defendants' later acquired residence in Oregon does not provide a reason for imposing Oregon's public policy").

In effect, VIG seeks to avail itself of Oregon's public policy of protecting weak consumers from one-sided fee provisions by arguing that Poggi needs to be protected from Zippy. Yet Poggi has never suggested, before or during this litigation, that he was anything less than an equal bargaining party who chose to enter into this franchise agreement and wants to see that contract's terms enforced to the letter. Poggi chose to implement arbitration proceedings in the District of Columbia as required by the contract, sought to apply D.C. law as provided by the contract, and sought to bind VIG to the contract as Zippy's alter ego. Given the facts of this case,

PAGE 8 – OPINION AND ORDER

VIG has not demonstrated that applying Poggi's contract choice, D.C. law, to the fees issue would circumvent a fundamental public policy of Oregon law.

VIG argues it did not choose D.C. law. ECF 77 at 3-4. Even if that position were consistent with its reliance on ORS 20.096, VIG argued for Delaware law to apply to the substantive issue in this case and won that argument. Again, the "drafters of ORS 20.096 were principally concerned with protecting Oregon consumers who enter into contracts with sellers of goods and services that give the sellers the unilateral right to an award of prevailing party attorney fees." *Fort*, 242 Or. App. at 171. Given the facts of this case, VIG has not demonstrated that holding VIG to the law governing the substantive issue in dispute, which VIG itself argued for, would circumvent Oregon's policy of protecting weak consumers from one-sided fee provisions.

This Court does not find that applying Delaware or D.C. law to the fees question in this case would circumvent a fundamental public policy of Oregon law. And under the law of either of those jurisdictions, each party shoulders its own fees.

## CONCLUSION

For the foregoing reasons, Plaintiff VIG's Motion for Fees and Costs, ECF 70, is DENIED.

**IT IS SO ORDERED**.

DATED this 19th day of March, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

PAGE 9 – OPINION AND ORDER